UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-CIV-22686-HOEVELER/GARBER

GEORGE E. BATCHELOR and
THE BATCHELOR FOUNDATION, INC.

    Plaintiffs,

v.

DELOITTE & TOUCHE, LLP and
BDO SEIDMAN, LLP.

    Defendants.

**CLOSED CIVIL CASE**

## ORDER AND REASONS

BEFORE the Court is the plaintiffs' motion for remand. The motion has been fully briefed and the Court heard oral arguments on February 11, 2009. For the reasons that follow, the motion for remand is GRANTED.

### I. Background

The plaintiffs are the Batchelor Foundation and the estate of George Batchelor, who died during the course of this litigation (collectively, "Batchelor" or "plaintiff"). Throughout the 1990s, Batchelor invested significantly in Grand Court Lifestyles, Inc. (Grand Court), a real estate company that sold multi-family senior-citizens homes. Grand Court hired Deloitte & Touche, LLP as its independent auditor in 1996, and fired Deloitte on October 6, 1998. According to the plaintiff, Deloitte was fired because it disagreed

with Grand Court about accounting procedures. Specifically, plaintiff claims that Deloitte insisted on appraising the value of all of Grand Court's multi-family homes, rather than just a sampling of the properties. Grand Court replaced Deloitte with the auditing firm BDO Seidman, LLP (BDO), which allegedly agreed to use the less costly sampling method.

Pursuant to Securities and Exchange Commission Regulation S-K, 17 C.F.R § 229.304, Grand Court was required to and did notify the SEC of Deloitte's termination by filing a Form 8-K on October 13, 1998, stating that:

> [T]here were **no disagreements** [between Grand Court and] Deloitte & Touche LLP on any matter of accounting principal or practice, financial statement disclosure, or auditing scope or procedure.

See Third Amended Complaint, ¶ 78 (emphasis added). Deloitte concurred with this statement in a separate letter to the SEC on October 13, 1998.

A year and a half later, Grand Court filed for bankruptcy protection and Batchelor lost much of his investment in the company. He sued Deloitte and BDO in state court in March 2002, asserting claims of negligence and negligent misrepresentation against both defendants in connection with their accounting practices and financial reports while working for Grand Court. In May 2005, Batchelor amended the complaint to add a fraud claim against Deloitte. The fraud claim alleged that Deloitte made an intentional misstatement in its October 13, 1998 letter to the SEC,

by falsely representing there were "no disagreements" with Grand Court concerning an accounting practice. Finally, on September 3, 2008, Batchelor filed a Third Amended Complaint in state court, adding a fraud-by-concealment claim against BDO for failing to correct the "no disagreement" misstatement, as it allegedly had a legal duty to do.

The question presented on this motion for remand is whether the state-law fraud claim against BDO, which is based in part on false statements in documents required by federal securities law, can be removed to federal court. BDO argues that whether there was a reportable "disagreement" is a question of federal law governed by SEC regulations. Further, BDO contends that the plaintiff seeks to avoid federal jurisdiction through artful pleading, because it is actually federal law, not state law, that imposes a duty on an auditor such as BDO to correct prior misstatements.

## II. Legal standard

"A removing defendant bears the burden of proving proper federal jurisdiction." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (citing Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002)). Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). In determining the existence of federal jurisdiction under 28 U.S.C. § 1331, the Court must look to the well-pleaded complaint alone. Louisville & Nashville Railroad Co. v. Mottley,

211 U.S. 149, 152 (1908). Although Batchelor has not asserted any claims under federal law, BDO argues that federal jurisdiction is nevertheless proper under the "substantial federal question" doctrine. Under this variant of § 1331 jurisdiction, a federal court has jurisdiction over a state-law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Adventure Outdoors, 552 F.3d at 1296, (citing Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 314 (2005).

### III. Discussion

The only aspect of the plaintiff's Third Amended Complaint that implicates federal law is the fraud claim in Count V.[1] The elements of fraud under Florida law are, "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984). In fraud-by-concealment cases, the plaintiff must additionally establish that the defendant had a "duty" to speak or

---

[1] Counts I - IV assert claims of negligence and negligent misrepresentation against both defendants. There is no contention that these claims involve federal law.

disclose the necessary information. TransPetrol Ltd. v. Radulovic, 764 So.2d 878, 880 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose"); Friedman v. American Guardian Warranty Services, Inc., 837 So.2d 1165 (Fla. 4th DCA 2003) (fraud based on failure to disclose material information depends on there being a duty to disclose). BDO contends that two elements of the plaintiff's fraud-by-concealment claim are based on federal law: whether Deloitte's statement was "false," and whether BDO had a "duty" to correct it.

A. Falsity

The falsity of Deloitte's October 13, 1998 letter to the SEC depends on whether there was, in fact, a reportable disagreement with Grand Court. "Disagreement," in turn, is defined by SEC Regulation S-K, 17 C.F.R. § 229.304, which imposes various disclosure obligations on registrants whose auditor is dismissed or resigns.[2] To the extent that federal jurisdiction is premised on

---

[2] Generally speaking, if an auditor is replaced, § 229.304(a)(iv) requires the registrant to state whether there were:
> [A]ny disagreements with the former accountant on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which disagreement(s), if not resolved to the satisfaction of the former accountant, would have caused it to make reference to the subject matter of the disagreement(s) in connection with its report. . . . Disagreements contemplated by this Item are those that occur at the decision-making level, i.e., between personnel of the registrant responsible for presentation of its financial statements and personnel of the

Regulation S-K, however, BDO's notice of removal is untimely.

Title 28 U.S.C. § 1446(b) gives a defendant 30 days to remove a case from when "it may first be ascertained that the case is one which is or has become removable." It has been apparent this case involves the application of Regulation S-K since May 2005, when Batchelor filed its Second Amended Complaint charging Deloitte with fraud. The factual basis of that fraud claim was also Deloitte's false statement in connection with the Form 8-K, thus implicating 17 C.F.R. § 229.304. The fact that Deloitte's lie, if proven, is now the predicate "falsity" for the fraud-by-concealment claim against BDO (for failing to report it) does not raise any new federal question that hasn't been in the case for several years.

Even if removal was timely, the fact that a court may have to consider Regulation S-K in deciding whether Deloitte made a false statement does not turn this into a case "arising under" federal law. The Supreme Court elaborated on the substantial federal

---

accounting firm responsible for rendering its report.

The Instructions to Item 304, which are included at the end of 17 C.F.R. § 229.304, defines "disagreements" as follows:
> The term disagreements as used in this Item shall be interpreted broadly, to include any difference of opinion concerning any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure which (if not resolved to the satisfaction of the former accountant) would have caused it to make reference to the subject matter of the disagreement in connection with its report. It is not necessary for there to have been an argument to have had a disagreement, merely a difference of opinion. . . .

question doctrine in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, 545 U.S. 308 (2005), a case in which the Court considered whether a state-law quiet title claim involving a federal tax statute was "arising under" federal law. The facts were that in 1994, the IRS seized the plaintiff's property and sold it at a tax sale. Although the property owner received actual notice of the seizure by certified mail, the relevant tax statute, 26 U.S.C. § 6335(a), required that notice must be "given" personally to the owner of the property. Five years after the tax sale, the original owner sued the purchaser in Michigan court, claiming superior title to the disputed property because the IRS never provided proper notice of the seizure. <u>Grable</u>, 545 U.S. at 310-11. The defendant removed the case to federal court, because the plaintiff's claim of title depended on an interpretation of the notice requirement in the IRS statute. <u>Id</u>. In concluding that the plaintiff's state-law claim raised a substantial issue of federal law, the <u>Grable</u> Court found significant that, "the *meaning* of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." <u>Id</u>. at 315 (emphasis added). The Supreme Court commented on this holding a year later in <u>Empire Healthchoice Assur., Inc. v. McVeigh</u>, 547 U.S. 677, 682-83 (2006), highlighting several factors that supported removal jurisdiction in <u>Grable</u>: the dispute centered on the action of a federal agency and its compatibility with a federal statute; the resolution of the federal

issue was dispositive of the case; the interpretation of the IRS statute would be controlling in numerous other cases; and the federal aspect of Grable involved a "nearly pure issue of law." Id. By contrast, in denying federal jurisdiction in Empire Healthchoice, the Court noted the dispute was between private parties, the federal issue was not dispositive, and the nature of the state claim was "fact-bound and situation-specific." Id. at 700-01.

The Eleventh Circuit recently applied these principals in Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 2008 WL 5264677 (11th Cir. 2008), a case in which the plaintiff's libel claim against the City of New York required the application of federal gun law. The case involved a "sting" operation by New York City investigators attempting to make a "straw purchase" of a handgun from Adventure Outdoors, a Georgia firearms dealer. After concluding the operation, New York City officials held a press conference criticizing Adventure Outdoors for "routinely ignor[ing] federal regulations" and "refus[ing] to obey federal laws." Id. at 1293. Adventure Outdoors sued the New York City officials for libel in Georgia court, and the New York defendants removed the case to federal district court. The New York defendants argued that federal jurisdiction was proper because an element of Adventure Outdoors' libel claim depended on proving the "falsity" of the City's accusations from the press conference. In other words, in order to win the case, Adventure Outdoors would have to prove that it had

not, in fact, broken federal firearms laws. Id. at 1299-1300. The City attempted to characterize this as a pure disagreement over the meaning and scope of federal gun laws, because the gun sale was recorded on video and the only question was simply whether federal law prohibited Adventure Outdoors' undisputed conduct. Id. The Eleventh Circuit rejected this uncomplicated picture of the case. Assuming the video captured the entire transaction--a fact that was "vehemently contest[ed]"--the case would present significant fact questions about whether Adventure Outdoors was deceived by the investigators into believing that the purported straw was actually a *bona fide* purchaser. Id. "If this case were to reach trial," the Eleventh Circuit wrote, "resolution of the plaintiffs' claims ultimately would require an evaluation of this factual argument. To be sure, the jury would have to apply federal law to reach its decision. But as the Supreme Court explained in Grable, the federal courts have rejected the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." Id. at 1300 (internal quotations omitted) (citing Grable, 545 U.S. at 313).

The federal aspect of Regulation S-K is not the kind of substantial federal issue that would give this Court jurisdiction over Batchelor's fraud claim. The "meaning" of SEC the regulation is not the central issue, and the crux of the dispute will inevitably be the fact-specific circumstances of Deloitte's termination and what BDO knew about it. Furthermore, the federal

question is not dispositive of the fraud claim. Even assuming the undisputed facts showed that Deloitte disagreed with Grand Court about an accounting practice, the plaintiff would have to prove the defendants acted with the requisite knowledge and intent, and that the plaintiff detrimentally relied on the false statements, all of which are disputed. The case is between private parties and no one has challenged the actions of the SEC, the federal agency charged with enforcing the securities regulations. Like the dispute in Adventure Outdoors, this case is "unlikely to impact the federal government's interests or its ability to vindicate those interests through administrative action." Id. Taken together, the factors discussed in Grable and Adventure Outdoors suggest that this case does not belong in the "special and small category of cases" that warrant federal jurisdiction over a state-law claim. See Empire Healthchoice, 547 U.S. at 700 (internal quotations omitted).

    B.    Duty

Batchelor alleges that BDO knew that statements submitted in connection with the Form 8-K were false, knew that Batchelor would rely on these statements, and therefore had an "an independent legal duty" under Florida law to disclose "the true reason for Deloitte's termination." See Third Amended Complaint at ¶ 127, 129. According to BDO, however, Florida law does not require an auditor to disclose discoveries of past fraud; rather, the only possible

source of this duty is Section 10A of the Exchange Act,[3] which provides:

> If, in the course of conducting an audit. . . the registered public accounting firm detects or otherwise becomes aware of information indicating that an illegal act (whether or not perceived to have a material effect on the financial statements of the issuer) has or may have occurred, the firm shall, in accordance with generally accepted auditing standards, as may be modified or supplemented from time to time by the Commission-- (A)(i) determine whether it is likely that an illegal act has occurred; and (ii) if so, determine and consider the possible effect of the illegal act on the financial statements of the issuer, including any contingent monetary effects, such as fines, penalties, and damages; and (B) as soon as practicable, inform the appropriate level of the management of the issuer. . . .

15 U.S.C. § 78j-1(b). Thus, under Section 10A, an auditor must take steps to advise its client, and in some cases the SEC, about certain unfavorable audit discoveries. So far as it appears, if BDO discovered that Deloitte or Grand Court lied to the SEC, it was required under Section 10A to do something about it. Indeed, when the state court judge asked Batchelor during oral argument to explain the source of BDO's duty to correct the Form 8-K, Batchelor drew attention to Section 10A and two federal cases discussing duties of public accountants. Plaintiff's counsel acknowledges that he initially planned to rely on Section 10A as the source of BDO's duty to disclose, but abandoned this theory after learning that

---

[3] The 2005 fraud claim against Deloitte did not implicate Section 10A because all parties agree that Deloitte has a duty under Florida law not to make intentional misstatements, and thus the plaintiff need not rely on federal law for the duty element.

only the SEC, and not a private plaintiff, has authority to enforce the duties imposed by that Section.

Although the Third Amended Complaint does not explain the source of BDO's alleged duty-to-correct, in seeking remand plaintiff argues that Florida statutes, regulations, and common law governing the conduct and duties of public accountants provides independent grounds for the duty element of the fraud claim. According to the plaintiff, these authorities require auditors to adhere to generally accepted accounting principles, one or more of which require auditors to disclose discoveries of fraud, in some circumstances.

Nevertheless, a corollary to the well-pleaded complaint rule is the rule that a plaintiff cannot avoid federal jurisdiction simply by framing a quintessentially federal claim in state-law terms. See Grable, 545 U.S. at 314; Sung v. Wasserstein, 415 F.Supp.2d 393, 397 (S.D.N.Y. 2006) (removal to federal court is proper when the purported state-law action is merely "the vehicle for the vindication of rights and. . . relationships created by federal law"). BDO contends Batchelor can't win its fraud-by-concealment claim unless it borrows the duty element from Section 10A, because the putative state-law basis for BDO's duty is based on irrelevant pieces of administrative rules, professional regulations, and fiduciary duty law. BDO asks the Court to reject the plaintiff's state-based theory, construe the fraud claim as an attempt to enforce the duty element of Section 10A, and dismiss the

-12-

claim under Rule 12, because Batchelor cannot enforce the duty imposed by Section 10A.[4] Once the Section 10A claim is dismissed, as the defendant urges it must be, the remaining claims, which have been part of this litigation in state court for four years, would presumably be remanded, and the case would proceed as if the Third Amended Complaint was never filed. This result is inappropriate unless the federal court is convinced the plaintiff will be unable to present a viable cause of action under its chosen state-law theory. Batchelor's state-law theory is not implausible. It appears that in some circumstances, Florida law may require an auditor to do more than remain silent in the face of discovering past fraud. If there is no such cause of action under state law, that determination is better made by the Florida court. See <u>Greaves v. McAuley</u>, 264 F.Supp.2d 1078, 1087 (N.D. Ga. 2003) (remanding to Georgia court where state-law "duty to disclose" theory was plausible). In this regard, BDO's argument for federal jurisdiction based on Section 27 of the Exchange Act is unavailing. That Section requires exclusive federal jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." 15 U.S.C. § 78aa. The Court is satisfied, however, that this lawsuit seeks to enforce a duty created by Florida law, not Section 10A of the

---

[4] BDO's motion to dismiss the fraud claim was stayed pending the Court's ruling on the motion for remand. All sides agree, however, that there is no private right of action under Section 10A.

Exchange Act. Accordingly,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1. The motion for remand is GRANTED; the clerk is instructed to REMAND this case to the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida, for all further proceedings.

2. All pending motions are DENIED as moot.

**DONE AND ORDERED** in chambers, Miami, Florida, April 24, 2009.

*[signature: Wm M Hoeveler]*

WILLIAM M. HOEVELER
UNITED STATES DISTRICT COURT JUDGE